**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **IN RE MATTER OF SUBPOENA SERVED ON SAMSUNG ELECTRONICS AMERICA, INC.** | **MISCELLANEOUS ACTION NO: _______________** |
| **ZeniMax Media Inc. and id Software LLC v. Oculus VR, LLC; Palmer Luckey; Facebook, Inc.; Brendan Iribe; and John Carmack (Pending in the United States District Court for the Northern District of Texas, Civil Action No. 3:14-cv-01849-K)** | |

**EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITION FROM SAMSUNG ELECTRONICS AMERICA, INC.**

Pursuant to Federal Rules of Civil Procedure 26 and 45, ZeniMax Media Inc. and id Software LLC (together, "ZeniMax") file this miscellaneous action and move to compel Samsung Electronics America, Inc. ("Samsung") to produce documents and present a corporate representative for deposition pursuant to a subpoena served on Samsung on June 9, 2016. Samsung and its corporate affiliates have been the beneficiaries of the unlawful use of ZeniMax's proprietary and confidential information. On May 21, 2014, ZeniMax sought redress of this theft and brought suit against Oculus VR, LLC ("Oculus"), Palmer Luckey, and, later added, Facebook, Inc. ("Facebook"), Brendan Iribe, and John Carmack (collectively, "Defendants") in the United States District Court for the Northern District of Texas. In June 2016, ZeniMax sought documents and a deposition from Samsung in the Eastern District of Texas relating to its relationship with the Defendants. Pursuant to Rule 45, ZeniMax now seeks relief in the Eastern District of Texas by

filing this motion to compel Samsung to produce the documents requested and present a corporate representative for deposition on the topics identified.

## I. INTRODUCTION

ZeniMax requests that the Court compel Samsung to comply with the subpoena issued on June 9, 2016, subject to the narrowing agreement made by ZeniMax on July 29, 2016, by producing the material, relevant information to which ZeniMax is entitled in this litigation.

Despite the fact that ZeniMax served its subpoena on Samsung on June 9, 2016 and that ZeniMax has since narrowed its topics as requested by Samsung, Samsung has not provided any information or documents whatsoever, has not stated whether documents or information are being withheld, has not confirmed that the requested documents and information exist, and has capitulated when asked to provide a date certain by which the requested documents and information would be produced. In short, despite meet and confer efforts spanning several weeks, ZeniMax has been provided with no concrete information regarding its requests.

After several weeks of attempted compromise by ZeniMax, and one week before the close of fact discovery in this case, Samsung refuses to produce, or even identify, the material, relevant information subpoenaed by ZeniMax.

## II. BACKGROUND

### A. ZeniMax's Case Against Defendants

On May 21, 2014, ZeniMax filed suit against Oculus and its founder Palmer Luckey. Complaint, *ZeniMax Media Inc. v. Oculus VR, LLC*, 3:14-cv-01849-K, at 1. At its core, the suit arose out of Oculus's unauthorized use of ZeniMax's confidential information and proprietary materials in developing its virtual reality ("VR") products including the Oculus Rift and Oculus's associated software packages. On August 28, 2014, ZeniMax amended its complaint to add

Facebook—the company that purchased Oculus. *See* Amended Complaint, at 1, attached as Exhibit 1. On May 20, 2016, ZeniMax filed its Second Amended Complaint adding defendants Brenden Iribe—Oculus's CEO—and John Carmack—a former employee of ZeniMax and now Chief Technology Officer ("CTO") of Oculus.[1]

As noted in the Amended Complaint, John Carmack, while at ZeniMax, was heavily involved in the development and design of ZeniMax's VR technology. Ex. 1, at 9-11. As an employee of ZeniMax, all work performed within the scope of his employment is the property of ZeniMax. *Id.* at 9. In 2011-2012, John Carmack and ZeniMax actively pursued VR research and technology, amassing valuable, confidential trade secrets and information on the development of VR technology including the development, combination, and optimization of hardware, firmware, and software for an improved and advantageous VR experience. *Id.* at 10. In March 2012, ZeniMax tested a VR headset at its offices using ZeniMax's VR technology and trade secrets. *Id.* at 11.

In April 2012, Carmack stumbled upon Palmer Luckey's primitive headset design, which Luckey called the "Rift," on an Internet forum. *Id.* at 11. Luckey—then a college-aged student—lacked the technical expertise to develop the "Rift" into a viable product. *Id.* Carmack, interested in Luckey's prototype, contacted Luckey and obtained the "Rift" prototype. *Id.* On analysis of the prototype, ZeniMax realized that it was crude and lacked many of the critical and basic features required for a viable product. *Id.* at 12. On May 24, 2014, Luckey entered into a non-disclosure agreement ("NDA") with ZeniMax, which prevents him from disclosing or using ZeniMax's confidential and proprietary information outside of agreement in writing by the parties. *Id.* at 13-

[1] Pursuant to the Court's protective order in the case, ZeniMax's Second Amended Complaint is filed under seal for purposes not relevant to this subpoena. Therefore, for purposes of this motion, ZeniMax will rely and cite to its First Amended Complaint.

14. Applying their years of expertise and knowledge, ZeniMax and Carmack made several breakthrough modifications and additions to the Rift prototype including solutions to address field of view, center of projection, and added specially-designed sensors, hardware, and programmed software to reduce latency and prevent distortions. *Id.* at 12.

ZeniMax showcased the ZeniMax-modified Rift prototype at trade shows and other press outlets. *See id.* at 15-17. The modified Rift received critical acclaim, leading Carmack to conclude that the application of ZeniMax VR technology to the modified Rift was "going to finally 'do it' for VR". *Id.* at 15. In June 2012, Luckey formed Oculus on the heels of the critical acclaim. *Id.* at 17.

In the months that followed, Luckey and Oculus sought funding through a Kickstarter campaign—an Internet fundraising website. *Id.* at 18-20. At the same time, Luckey and Oculus continued to rely on ZeniMax's expertise, VR technology, and credibility, while evading questions regarding compensation for the use of ZeniMax's proprietary technology and intellectual property. *Id.* at 19-23. In one instance, Oculus and Luckey relied on ZeniMax's technical assistance at a game conference in order to get the modified Rift to function. *Id.* at 22-23.

In the remaining months of 2012 and beginning of 2013, ZeniMax, Luckey, and Oculus discussed compensation for ZeniMax's work on the modified Rift and use of the ZeniMax's VR technology and intellectual property. *Id.* at 25-31. However, those discussions stalled. *Id.* Despite this, Oculus continued to use ZeniMax's VR technology and intellectual property without permission or license. *Id.* at 31.

After no agreement was reached, Oculus hired Carmack as Oculus's CTO in August 2013. In discussing his hiring, Oculus described his role while at ZeniMax as integral and as continued on both the hardware and software sides of modified Rift. *Id.* at 33. In February 2014, Oculus hired

five former ZeniMax senior employees, who had worked closely with Carmack while at ZeniMax, immediately after all five simultaneously resigned. *Id.* at 33-34. Carmack and each of the ZeniMax employees that joined Oculus has access to ZeniMax's confidential information and intellectual property. *Id.* at 33-34.

Later in 2014, Facebook announced its acquisition of Oculus while Oculus again rejected ZeniMax's continued claims for right and ownership relating to the modified Rift. *Id.* at 34. In April 2014, Carmack, now an employee of Oculus, noted on Twitter that he was in a hurry to rewrite the exact needed code which he wrote at a previous job (i.e. ZeniMax). *Id.* at 35.

Defendants continue to exploit ZeniMax's VR technology, intellectual property and proprietary information without license or authority from ZeniMax. *Id*. at 38.

**B. Samsung Benefits from Relationship with Defendants**

In 2013 while still relying on ZeniMax's VR technology, Oculus began demonstrating and pitching its technology to Samsung, who was attempting to develop a virtual reality device that would work with a smart phone. In 2014, Samsung partnered with Oculus to help with the development of what would become the Samsung Gear VR. Since this partnership, Samsung has released three editions of the Gear VR: (1) a First Innovator Edition was released in December 2014 to allow developers get an understanding of the device and develop content for the Gear VR ("Samsung Introduces Gear VR Innovator Edition for the U.S. at Samsung Developer Conference," Samsung Electronics Co. (Nov. 13, 2014), attached as Exhibit 2); (2) a Second Innovator Edition was released in March 2015, which largely resembled First Innovator Edition and its purpose of introducing the device to developers so that they may develop content ("Samsung Expands its Unrivaled Mobile Virtual Reality Experience with Gear VR Innovator Edition for Galaxy S6 and S6 Edge," Samsung Electronics Co. (Mar. 2, 2015) ("Mar. 2015 Press

Release"), attached as Exhibit 3); and (3) a Consumer Edition was released on November 20, 2015, which is the release of the Gear VR to average consumers of Samsung smartphone products ("New $99 Samsung Gear VR Powered by Oculus Available for Pre-Order Today," Samsung Electronics Co. (Nov. 10, 2015) ("Nov. 2015 Press Release"), attached as Exhibit 4).

The Gear VR is described by Samsung as being "powered by Oculus." Exhibit 2 (Nov. 2014 Press Release), at 1; Exhibit 3 (Mar. 2015 Press Release), at 1; Exhibit 4 (Nov. 2015 Press Release), at 1.

**C. ZeniMax's Subpoena to Samsung**

On June 9, 2016, ZeniMax, based both on its knowledge of Samsung's use of Oculus VR technology and Samsung's repeated emphasis on the benefits realized from its partnership with Oculus, served a subpoena on Samsung compelling it to produce a knowledgeable witness and relevant documents pertaining to its relationship with Oculus, particularly as it relates to ZeniMax's intellectual property and proprietary information used to bolster Samsung's Gear VR. *See* June 9, 2016 Subpoena to Samsung, attached as Exhibit 5.

Through meet and confer efforts spanning the course of over 6 weeks, ZeniMax narrowed its requests in an attempt to compromise with Samsung. *See* June 22, 2016 letter from K. Murata to J. Doan, attached as Exhibit 6; July 29, 2016 letter from J. Doan to K. Murata, attached as Exhibit 7. Specifically, ZeniMax seeks information narrowly tailored to Samsung's use of Oculus-provided source code or technology, Samsung's relationship with Oculus related to Oculus Rift VR technology, and the relationship between Samsung, Oculus, Facebook, and ZeniMax related to the VR technology at issue. *See* Exhibit 7 (7/29/16 Letter to K. Murata). Despite the narrowed requests and efforts to compromise, Samsung has neither produced the requested witness and documents nor provided ZeniMax with a time certain by which they would be produced. Now,

with 7 days remaining before the close of fact discovery in the case, and despite Samsung's apparent close working relationship with Oculus and its apparent familiarity with and benefit from ZeniMax's VR technology via Oculus, attempts to compromise have fallen through and Samsung has not produced any requested documents or information. In fact, Samsung has not yet identified whether such documents or information exist or whether they are being withheld.

## III. ARGUMENT

Federal Rule of Civil Procedure 45 provides a mechanism to conduct discovery, particularly subpoenas for documents and testimony, of third parties. Fed. R. Civ. P. 45. This Court, as the district where compliance with the subpoena is sought, is the proper forum for this dispute. *Orix USA Corp. v. Armentrout*, No. 3:16-MC-63-N-BN, 2016 WL 3926507, at *2 (N.D. Tex. July 21, 2016). Where a subpoenaed party seeks to quash a subpoena based on undue burden, the subpoenaed party has the burden to show "that compliance with the subpoena would be unreasonable and oppressive." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). When analyzing whether a subpoena presents an undue burden, the following factors are considered: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; (6) the burden imposed;" and (7) "the expense and inconvenience to a non-party." *Id*.

### A. The Subpoena Is Properly Directed to Samsung Electronics America, Inc.

ZeniMax's subpoena is limited to the documents within the possession, custody, and control of Samsung,[2] and as such, is within the permissible scope of Rule 34(a) of the Federal

[2] Samsung means Samsung Electronics America, Inc. and any agent, representative, officer, member, director, employee, consultant, partner, corporate parent, subsidiary, attorney, superior, principal, or affiliate thereof. *See* Exhibit 7 (7/29/16 letter to K. Murata).

Rules of Civil Procedure.[3] Multiple courts have held that discoverable information includes not only items or information in the responding party's actual possession, but also items which the responding party has the right or ability to obtain. *See Monroe's Estate v. Bottle Rock Power Corp.*, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004) ("Federal courts have consistently held that documents are deemed to be within the 'possession, custody, or control' of a party for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action….The applicable test is whether the litigant has the ability to obtain the documents on request to a related party, either as a matter of law or as a matter of practical fact.") (emphasis added); *U.S. v. 2121 Celeste Road SW, Albuquerque, N.M*, 307 F.R.D. 572, 590 (D.N.M. 2015) ("Simply put, if a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it."); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147-148 (S.D.N.Y. 2011) ("Regardless of the witness' legal relationship to a document, for the purposes of a Rule 45 subpoena, a document is within a witness's 'possession, custody, or control' if the witness has the practical ability to obtain the document…If the party subpoenaed has the practical ability to obtain the documents, the actual physical location of the documents – even if overseas – is immaterial.") (internal citations omitted).

Here, many of the documents and information at issue originate with Samsung America. However, with regard to certain documents that Samsung asserts are in the position of its Korean entity, Samsung attempts, as it has done in the past, to rest on the technicality that Samsung America and Samsung Electronics are separate entities. *See DeSmeth v. Samsung Am., Inc.*, 1998

[3] "The consensus meaning of the phrase "possession, custody, or control" is the same in the Rule 45 subpoena context." *See Northern Mariana Islands v. Millard*, 287 F.R.D. 204, 209-210 (S.D.N.Y. 2012) (internal citations omitted).

WL 74297 (S.D.N.Y. Feb. 20, 1998) (rejecting Samsung America's argument that Samsung America did not have possession, custody, or control of documents and information which were in the physical possession of Samsung Corp.). However, Samsung ignores the reality of the situation – as evidenced by, among other things, its participation with Samsung Electronics Corp. and other Samsung entities in defendant groups for purposes of litigation – that Samsung America has the practical ability to obtain the documents and information sought by ZeniMax. *See, e.g.*, *ZiiLabs Inc., Ltd. v. Samsung Elecs. Co. Ltd., et al.*, No. 2:14-cv-203-JRG-RSP, Dkt. No. 46 (E.D. Tex. July 14, 2014) (noting that Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC, are all represented by the same counsel and that SEC is the parent corporation of the other Samsung entities).

Accordingly, even where the documents or information sought are not currently in the physical custody of Samsung America, Samsung America has the practical ability to obtain the documents and information, and therefore the subpoena is directed to documents and information within the possession, custody, or control of Samsung.

In addition, where ZeniMax's efforts to obtain the requested information from parties to the litigation has been unsuccessful, the contention that the requested information and documents are available from defendants as more convenient sources falls flat. Unsuccessful attempts to obtain the requested documents and information do not require ZeniMax to further pursue the subpoenaed material from defendants before obtaining it from Samsung. *See Celanese Corp. v. Clariant Corp.*, 2016 WL 1074573, at *6 (N.D. Tex. Mar. 18, 2016) (slip op.).

### B. ZeniMax Requests Documents and Information Relevant to Its Claims

"Under the federal discovery rules, any party to a civil action is entitled to all information relevant to the subject matter of the action before the court unless such information is privileged,"

and a discovery request is relevant when it "seek[s] admissible evidence or evidence that is 'reasonably calculated to lead to the discovery of admissible evidence.'" *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004) (internal citations and quotations omitted).

Here, the basis of the underlying complaint is that Oculus stole ZeniMax's intellectual property and proprietary information related to its VR technology – technology now embodied in the Samsung Gear VR, which is "powered by Oculus." *See* "New Steps Toward the Future of Virtual Reality," Facebook, Inc., February 21, 2016 ("Feb. 2016 Press Release"), attached as Exhibit 8 (announcing over a million hours of video watched on the Gear VR). At issue in this litigation are the wrongful disclosure, use, and commercial exploitation of ZeniMax's intellectual property, as well as its sale or transfer to third parties. The subpoena seeks information which goes to the heart of these issues. Specifically, after narrowing the requested information based on negotiations and representations between ZeniMax and Samsung, Zenimax's subpoena comprises the following narrowly-tailored requests:

- Identification of or documents identifying Samsung products since 2013 that incorporate Oculus-provided source code or technology;

- Documents created for or from demonstrations or received from Oculus relating to demonstrations that Oculus provided to Samsung in June through August 2013 including but not limited to (1) an Oculus Rift demonstration in San Francisco, California in June 2013, (2) an Oculus Mobile or mobile software demonstration at the Suwon Campus in South Korea in July 2013, and (3) a 2-week Oculus demonstration or "camp" provided to Samsung in Irvine, California in August 2013; and

- Documents, communications, and correspondence exchanged between Oculus and Samsung; Facebook and Samsung; and John Carmack and Samsung from January 1, 2013 to present that references ZeniMax Media Inc. and/or id Software, LLC in the context of virtual reality technology, development of Oculus products, or development of Samsung products incorporating Oculus technology or source code including but not limited to correspondence and communications between Oculus/Facebook/John Carmack and various persons or entities involved in Samsung's development of the Oculus-powered technology during the relevant time period.

*See* Exhibit 7 (7/29/16 Letter to K. Murata).

The information sought relates directly to Samsung's use of ZeniMax's proprietary information and technology via its relationship with Oculus. After Oculus was purchased by Facebook, Samsung has admitted, and in fact has praised and promoted, its use of Oculus technology and the integral role that technology plays in the Samsung Gear VR. The information sought relates to the benefit realized by Oculus from its commercial exploitation of ZeniMax's intellectual property, and is therefore directly relevant, at the very least, to all categories of damages in this action.

### C. ZeniMax's Requests Are Not Overbroad or Unduly Burdensome

It is Samsung's burden to show that compliance with the subpoena would be unduly burdensome or oppressive, and it has not made any such showing. *Wiwa*, 392 F.3d at 818. ZeniMax has attempted to work with Samsung over the course of several weeks to narrow its requests so that they (1) are tailored to request the specific information that ZeniMax seeks, and (2) give fair notice to Samsung, thus alleviating any undue burden, of what specifically is requested. In narrowing the subpoena to request the documents and information currently sought, ZeniMax has not only specified the relevant time period of 2013 to present, but also has specified that the documents and information requested relate specifically to Oculus-provided source code or technology at issue in this litigation. Rather than requesting "all documents related to" a party, or even all documents related to the Samsung Gear VR, ZeniMax's requests are specifically and narrowly tailored to (1) the specific relevant context of the relationship between Oculus and Samsung; (2) the use of Oculus-provided technology in Samsung products; (3) documents and information only from the critical time period; and (4) documents and information specifically related to both the underlying technology and affirmatively identified persons or entities. *See*

Exhibit 7 (7/29/16 Letter to K. Murata).

Even where the requested materials are voluminous, of which Samsung has only complained of in a generic, boilerplate assertion without factual support, this "will not render subpoenas invalid, especially if subpoenas are limited to a reasonable period of time and specify with reasonable particularity the subjects to which the requested materials relate." *U.S. v. Int'l Business Machines Corp.*, 83 F.R.D. 97, 107 (S.D.N.Y. 1979). Moreover, "[t]he mere assertion that compliance with a subpoena is burdensome and onerous is alone not sufficient without showing of the manner and extent of the burden and the injurious consequences of compliance." *Long Beach Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 189 F. Supp. 589, 604 (S.D. Cal. 1960) (rev'd on other grounds 295 F.2d 403). Any argument by Samsung that this precision and specificity in identifying the information sought is somehow overbroad strains credibility.

Nor has Samsung, one of the world's largest public companies, asserted that it is financially unable to produce such documents. Further, without analysis of the documents and information sought, and in light of the significant benefits realized by Samsung from its use of ZeniMax's proprietary materials via Oculus,[4] any argument that the value of the information to ZeniMax, which has been discussed in detail, is outweighed by the unidentified cost to Samsung of collection, lacks evidentiary support. At the very least, such an assertion would require Samsung to identify whether such material exists, which it has yet to do.

The general assumption is that the producing party bears the costs of production. *See Andra Grp. LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 458 (N.D. Tex. 2015). Courts should only

---

[4] *See* Exhibit 8 (Feb. 2016 Press Release); Ben Gilbert, "How Samsung's VR headset convinced John Carmack to Joint Oculus VR," https://www.engadget.com/2014/09/04/samsung-gear-vr-john-carmack/ (Sept. 4, 2014) ("Gilbert Article") ("Early on, [Carmack] said, the prototype software 'was awful' and working with Samsung required a lot of back-and-forth: a wall he broke through after demonstrating benefits with 'obscene' programming workarounds."), attached as Exhibit 9.

stray from this general rule after balancing the requesting party's need for discovery and consideration of "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance." *Id*. (internal citations and quotations omitted). Here, based on publicly available documents and information, it is apparent that Samsung's use of ZeniMax's proprietary technology and information through its reliance on Oculus is both widespread and highly beneficial to Samsung. S*ee* Exhibits 8 (Feb. 2016 Press Release); Exhibit 9 (Gilbert Article) (Carmack states, "[Samsung] knew these are good suggestions; these suggestions lead to real improvements."). Samsung has not shown that it is unable to bear the costs of producing the requested information, or even that such costs are more appropriately borne by ZeniMax, whose proprietary information is being used by Samsung for its own financial gain.

Furthermore, sanctions in the form of costs and fees are only appropriate where the party issuing the subpoena "failed to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Andra*, 312 F.R.D. at 459. Where, as here, the documents are generally relevant, the requesting party has limited the scope of the requests, and the responding party has not shown undue burden, the requesting party has not failed to take reasonable steps to avoid imposing undue burden or expense. *See id*. Finally, this is not a case where the instant matter involves a class action or an issue that more widely concerns the public, but instead the conduct of the people and entities who misappropriated and infringed the specific technology at issue in this litigation, and as such, this factor weighs against the shifting of costs of production. Samsung has no excuse for its failure to timely produce the requested witness and documents.

## IV. REQUEST FOR EXPEDITED BRIEFING

The deadline for the parties to complete discovery in this case is August 19, 2016. So that the briefing on this issue can be completed prior to the discovery deadline, ZeniMax requests an expedited briefing schedule. Specifically, ZeniMax requests that the Court order Samsung to file its Response to this Motion by 12:00 pm on Tuesday, August 16, 2016, and that ZeniMax file its Reply by 5 pm on Thursday, August 18, 2016.

## V. CONCLUSION

Because the subpoena requests relevant, material documents and testimony from Samsung, and because it does not impose an undue burden on Samsung, ZeniMax respectfully requests that the Court compel Samsung to produce the documents and information requested in the subpoena.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com

Brent D. McCabe
Texas Bar No. 24088004
HALTOM & DOAN
4975 Preston Park Blvd., Suite 625
Plano, TX 75093
Telephone: (469) 814-0433
Facsimile: (469) 814-0422
Email: bmccabe@haltomdoan.com

**ATTORNEYS FOR PLAINTIFFS ZENIMAX MEDIA INC. and ID SOFTWARE LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule 5.1(e). All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 12th day of August, 2016.

*/s/ Jennifer H. Doan*
Jennifer H. Doan

## CERTIFICATE OF CONFERENCE

Counsel on behalf of Plaintiffs, Jennifer Doan and Brent McCabe, and Samsung, Ken Murata, have had a number of meet and confers. Finally, on August 9, 2016, with only a week left in discovery and no documents produced, Mr. McCabe and Mr. Murata met and conferred by telephone and the parties reached an impasse. As such, ZeniMax presents this issue to the Court. Samsung opposes this motion.

*/s/ Jennifer H. Doan*
Jennifer H. Doan